**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| VIRGINIA MERRITT, | : | |
| | : | |
| Claimant, | : | |
| | : | |
| v. | : | CASE NO. 3:09-CV-47-CDL-GMF |
| | : | Social Security Appeal |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ) determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations.  Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).  All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied.  *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987).  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  The court's role in reviewing claims brought under the Social

Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq*.

Under the regulations, the Commissioner uses a five-step procedure to determine if

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

a claimant is disabled.   20 C.F.R. § 404.1520, Appendix 1, Part 404.   First, the Commissioner determines whether the claimant is working.   If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.   Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments.   Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing").   Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.   Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.   In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.   *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).   The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.   *Id.*

## ISSUES

I.   **Whether the ALJ erred in finding the claimant had the residual functional capacity to perform medium work, and return to past relevant work.**

II.   **Whether the ALJ erred in failing to fully develop the record regarding the claimant's mental health status.**

## Administrative Proceedings

Claimant protectively filed for Supplemental Security Income ("SSI") on January 27, 2005.  (*See* T-185).[2]  Her claim was initially denied on April 19, 2005 and was further denied upon reconsideration on July 25, 2005.  (T-21).  A request for hearing was timely filed on August 24, 2005.  (T-21).  Claimant also protectively filed a claim for Disability Insurance Benefits ("DIB") on January 31, 2008; the Administrative Law Judge ("ALJ") associated this claim with her earlier SSI claim.  (T-21).  On June 30, 2008, a video hearing was held in Athens, Georgia.  (T-426-44).  On August 27, 2008, the ALJ issued an unfavorable ruling, which Claimant appealed.  (T-18-26).  On February 5, 2009, the Appeals Council denied Claimant's request for review of the ALJ's decision, making the decision the Commissioner's final determination in the matter.  (T-7-9).

## Statement of Facts and Evidence

Claimant's applications for SSI and DIB benefits allege a disability beginning on May 1, 2004 due to back and knee pain, failing eyesight, high blood pressure, diabetes, kidney problems, and depression/anxiety.[3]  (T-99, 120, 182-83, 236, 432-37).  After careful consideration of the record, including hearing testimony from medical expert Allen Levine, M.D., vocational expert John Blakeman, Ed.D., and Claimant, the ALJ concluded that

---

[2]The record does not contain a copy of Claimant's January 27, 2005 claim for SSI benefits.  The filing date does not appear to be in dispute, however, and Claimant's disability report identifies the application as being filed on January 27, 2005.  (*See* T-185).

[3]The ALJ found Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2004.  (T-22).

Claimant suffered from the severe impairment of degenerative joint disease of the right knee. (T-24).  Although the ALJ considered this impairment to be severe within the meaning of the Regulations, the ALJ also concluded that this impairment, or any combination of alleged impairments, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T-24).  The ALJ also found that Claimant had the residual functional capacity ("RFC") to perform a full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) and that Claimant could perform her past relevant work, as actually and generally performed.  (T-24-26).

## DISCUSSION

**I.     Did the ALJ err in finding Claimant had the residual functional capacity to perform medium work and return to past relevant work?**

The ALJ concluded that Claimant had the RFC to perform the full range of medium work as defined in the Regulations and that Claimant could therefore return to her past relevant employment as a packer, sock boarder and pairer, or sock braider.  This conclusion is supported by substantial evidence.

*A.     The ALJ Did Not Err in Determining Claimant's RFC.*

The court first finds that the ALJ did not err in determining that Claimant retained the RFC to return to the full range of medium work.  As the ALJ noted, no treating physician or medical personnel reported that Claimant is altogether precluded from working.  (T-25).  However, the record does contain two potential sources for limitations on Claimant's ability to work:  (1) a 2005 RFC assessment conducted by Dr. G. David Maxwell and (2)

Claimant's self-reported symptoms.  The ALJ properly evaluated each of category of possible limitation, and his conclusion that Claimant retained the ability to perform the full range of medium work is supported by substantial evidence.

First, it is clear that the ALJ at least implicitly considered the RFC assessment.  (*See* T-25 (noting that Claimant's symptoms were not credible because they conflicted with the RFC assessment); *see also Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("[I]t is not required that the Secretary mechanically recite the evidence leading to her determination.")).  While this assessment placed some limitations on Claimant's ability to work, these limitations are entirely consistent with the medium work RFC assigned by the ALJ.  "Medium work" is described

> as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds . . . sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects . . . .
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping.  (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.)  Flexibility of the knees as well as the torso is important for this activity. . . .  In most medium jobs, being on one's feet for most of the workday is critical.

SSR 83-10.  According to Dr. Maxwell's RFC assessment, Claimant was permitted to occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and perform unlimited pushing and/or pulling.  (T-399).  Claimant was also permitted to

6

"constantly" climb ramps and stairs, balance, and stoop, although she was limited to only "frequent" kneeling, crouching, crawling, and climbing of ladders, ropes, and scaffolds. (T-400). Dr. Maxwell identified no manipulative, visual, communicative, or environmental limitations on Claimant's ability to work. (T-401-02). The medium work RFC assigned by the ALJ is therefore consistent with Dr. Maxwell's RFC evaluation.

Claimant also alleges, however, that her work restrictions are greater than those prescribed by Dr. Maxwell. At step four of the sequential evaluation process, "an ALJ may properly challenge the credibility of a claimant who asserts he is disabled by subjective complaints." *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). The ALJ is required to find evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1224 (11th Cir. 1991) (per curiam). When a claimant's statements about her symptoms are not substantiated by objective medical evidence, the adjudicator must consider the entire case record and make a finding on the credibility of the claimant's statements. SSR 96-7p. When an ALJ decides not to credit a claimant's testimony regarding her symptoms, the ALJ must clearly articulate his reasons for doing so. *See Holt*, 921 F.2d at 1223. While "[t]he credibility determination does not need to cite particular phrases or formulations," it must sufficiently indicate that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).

7

"Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Holt*, 921 F.2d at 1223.

Claimant testified that her knee and back pain permits her to stand for only thirty minutes at a time, requires her to stand and walk after a period of being seated, causes her to walk very slowly, and requires her to elevate her legs during the day. (T-433-34). Claimant also testified that because of her kidney problems, she requires access to a restroom nine or ten times in an eight-hour day; in addition, Claimant testified that her high blood pressure often affects her vision and makes her dizzy. (T-435-37). The ALJ concluded that Claimant's symptoms could reasonably have been produced by her underlying medically determinable physical impairments—degenerative joint disease, diabetes, and high blood pressure. (T-24). The ALJ also concluded, however, that Claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible because they were not consistent with her medium work RFC assessment. (T-25). The ALJ applied the proper legal standard to reach this conclusion, and it is supported by substantial evidence. In addition to the RFC assessment suggesting that Claimant could perform medium work, the ALJ referred specifically to x-ray records from 2005 revealing only "minimal degenerative changes" to Claimant's right knee and a 2008 treatment record indicating that Claimant's knees were "stable," even though Claimant complained of some pain on palpation. (T-25). Furthermore, the ALJ referenced a 2005 consultative examination performed by Dr. Stephen Schacher which revealed Claimant could walk up and down stairs without difficulty, did not use a cane or other assistive device, had full range of motion of her lumbar spine (albeit with

some associated pain), and exhibited no warmth, tenderness, swelling, crepitus, scarring, or deformity of any joints. In addition, Dr. Schacher noted that Claimant's motor evaluations were five out of five and that she had normal reflexes and no sensory deficits. (T-441; *see also* T-333-36). The ALJ also relied upon the testimony of the independent medical examiner, who concluded that Claimant had no medically determinable impairments or severe impairments based upon his review of the record, his observation of Claimant at the hearing, and his evaluation of Claimant's testimony. (T-25).

The ALJ also observed that "the claimant did not testify to any significant limitation in activities of daily living[.]" (T-25). This observation is likewise supported by substantial evidence. As the ALJ noted, Claimant testified at the hearing that she took regular walks, although she also stated that these walks were short because of her pain. (T-437). Furthermore, Claimant's March 2005 Function Report reveals that Claimant helped her sick mother by cooking, cleaning, and helping her use the restroom. (T-203). Claimant also noted that she was able to shop for groceries and do laundry at the laundromat. (T-205).

While the record certainly contains some evidence suggesting that Claimant suffered from pain and other symptoms, the ALJ acted within his discretion when he found that the alleged persistence, severity, and limiting effects of these symptoms were not substantiated by objective medical evidence. This court may not re-weigh the evidence of record. *Bloodsworth*, 703 F.2d at 1239; *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."). Absent any credible evidence that

9

Claimant was restricted to a lesser degree of work, the ALJ's conclusion that Claimant retained the RFC to engage in the full range of medium work is not erroneous.

      2.     *The ALJ Did Not Err in Determining Claimant Could Return to Her Past Relevant Work.*

Claimant also argues that the ALJ erred in concluding she could return to her previous positions as a packer, sock boarder and pairer, or sock braider because the ALJ failed to specify his findings regarding Claimant's functional limitations as they related to the functional requirements of Claimant's prior positions.   Claimant argues that her duties as a packer, boarder, and braider involved demands greater than medium work because those jobs actually required her to walk and/or stand for up to eight hours a day.  (*See, e.g.,* T-213). Thus, Claimant argues, the ALJ erred in concluding that she could perform her past relevant work, as actually and generally performed, with a medium work RFC.

An ALJ has a duty to develop evidence of the physical requirements of a claimant's prior work and evaluate the claimant's ability to perform this work despite any job-related restrictions.  *See, e.g., Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990).  Without evidence of the physical requirements of a claimant's past work, an ALJ cannot properly evaluate the claimant's RFC to perform it.  *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986) (per curiam).  The claimant, however, retains "the initial burden of proving that she is unable to perform her previous work." *Lucas*, 918 F.2d at 1571.  A claimant will not be considered "disabled" under the regulations if she is able to perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional

demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61; *see also Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) ("The regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." ).

In this case, at a minimum, the ALJ properly concluded that Claimant retained the capacity to perform her past relevant work as such work is generally performed in the national economy. As evidence of Claimant's duties as a packer, sock boarder and pairer, and sock braider, the ALJ relied upon the testimony of vocational expert Dr. John Blokeman. (*See* T-26). Dr. Blokeman testified that Plaintiff's previous job as a packer was medium and unskilled; that her previous work boarding and pairing socks was light and unskilled; and that her previous work braiding socks was medium and semi-skilled. (T-442-43). The ALJ further found that Dr. Blokeman's testimony was "consistent with the information contained in the *Dictionary of Occupational Titles*." (T-26). The regulations recognize that these sources may be used by an ALJ to help determine the functional demands of a claimant's past relevant work. *See* 20 C.F.R. § 404.1560(b)(2).

Claimant argues, however, that because her past relevant work actually required her to stand for eight hours a day, she is incapable of performing it despite its classification by the VE and the DOT as light and/or medium work. *See* SSR 83-10 (noting that both light and medium work require an employee to stand for only six hours in an eight hour workday). Even assuming that the VE and DOT evidence was insufficient to support a finding that Claimant did not retain the capacity to perform the functional demands of her job as she had

*actually* performed it, Claimant has failed to meet her burden of demonstrating that she could not perform these jobs as they are *generally* performed. *See, e.g., Jackson*, 801 F.2d at 1294 (finding that claimant was not prevented from doing past relevant work as such work was generally performed because although claimant was required to perform a restricted activity in his specific prior job, he had not shown such performance was generally required in similar positions); *see also* SSR 82-61 ("The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy."). Accordingly, the ALJ did not err in concluding that Claimant could perform her past relevant work as a packer, a sock boarder and pairer, or a sock braider—as such work is usually performed in the national economy—even with an RFC for medium work.

## II. Whether the ALJ Erred by Failing to Develop the Record Regarding Claimant's Mental Status

Claimant next contends that the ALJ erred by failing to order a consultative examination by a psychologist to determine Claimant's intelligence level. Because a hearing before an ALJ is not an adversary proceeding, an ALJ has a basic duty to develop a full and fair record. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). When a claimant is not represented by counsel and has not waived the right to counsel, the ALJ has a special duty to ensure that favorable as well as unfavorable facts and circumstances are elicited for review. *Id.*; *see also Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982); *McConnell v. Schweiker*, 655 F.2d 604, 606 n.2 (5th Cir. 1981). In the instant action, the record

12

demonstrates that Claimant was represented by counsel.  Thus, the ALJ's duty was not a special duty.

The ALJ may still be required to order consultative exams and tests when they are necessary to make an informed decision.  *Reeves v. Heckler*, 734 F.2d 519, 522 (11th Cir. 1984).  In the case of a mental impairment, Claimant's own testimony, coupled with his treating physicians' suggestions, may be sufficient to require a consultative examination by a psychiatrist or psychologist.  *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988) (per curiam).  In this case, however, no treating physician suggested that Claimant had a mental impairment.  To the contrary, the record contains a Psychiatric Review Technique form completed by Michael E. Carter, Ph.D. indicating that Claimant had no medically determinable mental impairment. (T-384).  Dr. Schacher's consultative evaluation also notes that Claimant had "no obvious signs of depression or retardation," that her "ability to maintain concentration and attention to task and remember and follow simple or complex instructions and adhere to a work schedule and meet production norms does not appear to be a problem," and that he observed "no mental health issues that would negatively impact social interactions." (T-333).  Dr. Schacher also concluded that Claimant was capable of handling her own funds. (*Id.*).  Furthermore, despite testifying at the hearing that she was virtually illiterate, Claimant elsewhere asserted that she could read and write in English and that she could follow written instructions "very well." (T-126, 136, 182, 207).  The court also notes that the initial burden of establishing disability is on the claimant, not the Commissioner.  *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973).  If Claimant

believed that medical evidence was missing from the record, then the burden was upon her to bring forth this evidence.  It is found, therefore, that the record contained sufficient evidence from which the ALJ could make an informed decision regarding whether Claimant suffered from a mental impairment, and further intelligence testing was not necessary to fully develop the record.

Claimant also fails to identify how she was prejudiced by the ALJ's purported failure to develop the record regarding her mental status.  Even in the case of a special duty, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).  Claimant contends that intelligence testing was necessary in this case for two reasons.  First, Claimant  argues that according to the "grids," if her RFC was light work and she was illiterate, she would automatically be found to be disabled.  Second, Claimant contends that a full analysis of her mental functioning was required to determine the extent to which her lack of education and literacy might erode her occupational base, and this information would be necessary to form a complete hypothetical so that a VE could establish what work might be available to Claimant in the national economy.  These arguments, however, presuppose that Claimant would prevail on her claim that she could not perform her past relevant work.  The ALJ was not required to elicit evidence of other jobs Claimant could perform in the national economy or apply the grids once the ALJ determined Claimant could perform her past relevant work.  *See, e.g.,* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are

14

disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); *see also Walker*, 826 F.2d at 1000 ("Before an ALJ can apply the grids, he must determine that person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work.").  The ALJ did not err by failing to order intelligence testing.

   **WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **AFFIRMED**.  Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

       THIS the 28 day of September, 2009.

       **S/ G. MALLON FAIRCLOTH**
       **UNITED STATES MAGISTRATE JUDGE**

mkw